IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF GEORGIA, INC., AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA, INC., AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA, INC., AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA, INC., | ) | CIVIL ACTION<br><br>FILE NO. |
| Plaintiffs, | ) | |
| v. | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY AND U.S. CUSTOMS AND BORDER PROTECTION, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.**

## INTRODUCTION

1. The American Civil Liberties Union of Georgia, American Civil Liberties Union of North Carolina, American Civil Liberties Union of West Virginia, and American Civil Liberties Union of South Carolina (collectively, "Plaintiffs" or "ACLU") bring this action under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 *et seq*., as amended, to obtain injunctive and other appropriate relief requiring Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") to respond to a FOIA request sent by Plaintiffs on February 2, 2017 ("Request"), and to promptly disclose the requested records.

2. The Request seeks records concerning CBP's local implementation of President Trump's January 27, 2017 Executive Order titled "Protecting the Nation From Foreign Terrorist Entry Into the United States," Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017) ("Executive Order No. 1"), as well as any other judicial order or executive directive issued regarding Executive Order No. 1, including President Trump's March 6, 2017 Executive Order, identically titled, Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) ("Executive Order No. 2") (collectively, "Executive Orders"). A true and correct copy of the Request is attached as **Exhibit A**.

3. Specifically, the Request seeks records concerning CBP's local implementation of the Executive Orders at sites within the purview of CBP's College Park Field Office. These include Hartsfield/Jackson International Airport, Charlotte Douglas International Airport, Charleston International Airport and

Yeager International Airport ("Local International Airports") and the Atlanta, Charlotte, and Charleston ports of entry ("Ports of Entry").

4. Among other things, the Executive Orders purport to halt refugee admissions and bar entrants from several predominantly Muslim countries from entering the United States.

5. Defendants' implementation of the Executive Orders has been the subject of significant public concern, as reflected by mass protests around the country, substantial news coverage, and numerous lawsuits filed following the President's signing of each Executive Order.

6. Over the weekend of January 27–29, 2017, at least five lawsuits resulted in emergency court orders enjoining implementation of various sections of Executive Order No. 1.[1] On March 15, 2017, a district judge enjoined implementation of Sections 2 and 6 of Executive Order No. 2.[2]

---

[1] *Vayeghan v. Kelly*, No. CV 17-0702, 2017 WL 396531 (C.D. Cal. Jan. 29, 2017); *Tootkaboni v. Trump*, No. 17-CV-10154, 2017 WL 386550 (D. Mass. Jan. 29, 2017); *Doe v. Trump*, No. C17-126, 2017 WL 388532 (W.D. Wash. Jan. 28, 2017); *Aziz v. Trump*, No. 1:17-CV-116, 2017 WL 386549 (E.D. Va. Jan. 28, 2017); *Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017).

[2] *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017).

7. News reports described Defendants' implementation of the Executive Orders as "chaotic" and "total[ly] lack[ing] . . . clarity and direction." [3]

8. Official DHS statements reflected this confusion. For example, DHS stated on January 28 that Executive Order No. 1 would "bar green card holders."[4] The next day, however, DHS Secretary John Kelly deemed "the entry of lawful permanent residents to be in the national interest"[5] and the government clarified that Executive Order No. 1 did *not* apply to green card holders.[6]

9. Reportedly spurred by this chaos, on January 29, Senators Tammy Duckworth and Dick Durbin called upon the Office of the Inspector General of the Department of Homeland Security to investigate Defendants' implementation of Executive Order No. 1.[7] The Senators specifically sought information regarding:

---

[3] *See, e.g.*, Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

[4] *See* Max Greenwood, *Immigration Ban Includes Green Card Holders: DHS*, THE HILL, Jan. 28, 2017, *available at* http://thehill.com/policy/national-security/316670-trump-refugee-ban-bars-green-card-holders-report.

[5] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

[6] *See* Robert Mackey, *As Protests Escalate, Trump Retreats From Barring Green Card Holders*, THE INTERCEPT, Jan. 29, 2017, *available at* https://theintercept.com/2017/01/29/trumps-executive-order-no-longer-bars-green-card-holders/.

[7] *See* Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at*

any guidance Defendants provided to the White House in developing the order; any directions that were provided to Defendants in implementing it; whether CBP officers complied with the relevant court orders; and whether DHS and CBP officers kept a list of individuals that they had detained at ports of entry under the order. In response, the Inspector General directed Defendants' personnel to preserve all records "that might reasonably lead to the discovery of relevant information relating the implementation of" Executive Order No. 1.[8]

10. Upon information and belief, the January 27, 2017 Executive Order No. 1 resulted in at least eleven people being detained at Hartsfield-Jackson Atlanta International Airport. Upon information and belief, a 76-year-old with a heart condition and glaucoma was one of the eleven people detained after returning from Iran. Further, a CNN producer was detained at Hartsfield-Jackson Atlanta International Airport, despite being a lawful permanent resident and having the proper paperwork.

11. Upon information and belief, when Georgia Congressmen John Lewis and Hank Johnson arrived at Hartsfield-Jackson Atlanta International Airport on January 28, 2017 to ascertain how many people were being detained pursuant to

---

https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

[8] *Id.*

Executive Order No. 1, immigration officials reportedly refused to provide the Congressmen with any information. It was not until after the Congressmen refused to leave the Airport and sat with waiting family members that immigration officials met privately with the Congressmen. After the meeting, Congressmen Lewis reported that there were no written protocols for enforcing the Executive Order. *See* Jeremy Redmon, "Congressmen: 11 held at Atlanta airport after Trump's executive order," ATLANTA JOURNAL-CONSTITUTION, Jan. 28, 2017, available at http://www.ajc.com/news/national-govt-politics/congressmen-held-atlanta-airport-after-trump-executive-order/UKb3ZMcfi85YzAuCiNOFjI.

12. During the time that Executive Order No. 1 was in effect, a number of families contacted the American Civil Liberties Union of Georgia, seeking information and legal representation for their family members who were traveling on immigration visas, non-immigration visas, and legal permanent resident documents, and who had been told that their family members would either be detained or would not be allowed to enter or re-enter the United States.

13. During the time that Executive Order No. 1 was in effect, the American Civil Liberties Union of Georgia was contacted by a number of families whose relatives had valid visas to enter the United States but who nevertheless were not allowed to board planes and thus were denied entry into the United States.

14. Thousands of peaceful protesters arrived at Hartsfield-Jackson Atlanta International Airport on Sunday, January 29, 2017 to protest Executive Order No. 1.

15. Similar protests occurred at Charlotte Douglas International Airport, Charleston International Airport, and Yeager International Airport.

16. Disclosure of the records Plaintiffs seek through this action would facilitate the public's understanding of how Defendants implemented and enforced the Executive Orders through the College Park Field Office, including in particular at Hartsfield-Jackson Atlanta International Airport. Such information is critical to the public's ability to hold the government accountable.

17. This action is necessary because Defendants have failed to provide Plaintiffs with a determination as to whether they will comply with the Request, although more than 20 business days have elapsed since Defendants received the Request.

## JURISDICTION

18. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

## VENUE

19. Venue in the Northern District of Georgia is proper under 5 U.S.C. § 552(a)(4)(B) as the requested agency records are, upon information and belief, situated within this District at CBP facilities at or near Hartsfield-Jackson Atlanta International Airport and Atlanta Port of Entry Office and because one of the Plaintiffs' principal place of business is in the Northern District of Georgia. For the same reasons, venue also is proper under 28 U.S.C. § 1391(e).

20. Assignment to the Atlanta Division is proper under LR 3.1(A), App. A, I because one of the Plaintiffs resides in Fulton County and, upon information and belief, the requested agency records are located in Fulton County.

## PARTIES

21. Plaintiffs are non-profit, 501(c)(4) membership organizations that educate the public about the civil liberties implications of pending and proposed state and federal legislation, provide analysis of pending and proposed legislation, directly lobby legislators, and mobilize their members to lobby their legislators.

22. Defendant Department of Homeland Security is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

23. Defendant U.S. Customs and Border Protection is a component of DHS and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

24. Plaintiffs are informed and therefore believe that Defendants have possession, custody, or control of the requested records.

## FACTS

25. On February 2, 2017 Plaintiffs sent the Request to CBP's College Park Field Office via certified, trackable mail, with a tracking number of Federal Express # 785490788347; and to CBP's FOIA Officer at CBP Headquarters via certified, trackable mail, with a tracking number of Federal Express #785490864342.

26. The Request sought copies of CBP's local interpretation and enforcement of the Executive Order at: 1) certain airports specified in the Request, namely, Hartsfield/Jackson International Airport, Charlotte Douglas International Airport, Charleston International Airport and Yeager International Airport ("Local International Airports"); and 2) certain Port of Entry offices specified in the Request, including the Atlanta Port of Entry Office, Charlotte Port of Entry Office, and Charleston Port of Entry Office ("Port of Entry Offices"). The Request expressly did *not* seek information held in the records of CBP Headquarters.

27. Specifically, the Request sought the following:

1. "Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following at Local International Airports:

a. President Trump's Executive Order, signed on January 27, 2017 and titled 'Protecting the Nation From Foreign Terrorist Entry Into the United States';

b. Any guidance 'provided to DHS field personnel shortly' after President Trump signed the Executive Order, as referenced in CBP's online FAQ;[9]

c. Associate Director of Field Operations for U.S. Citizenship and Immigration Services Daniel M. Renaud's email, sent at 11:12 A.M. on January 27, 2017, instructing DHS employees that they could not adjudicate

---

[9] To assist CBP in responding, the Request included the following information in a footnote for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter.*') (emphasis added)."

any immigration claims from the seven targeted countries;[10]

d. Judge Donnelly's Decision and Order granting an Emergency Motion for Stay of Removal, issued in the Eastern District of New York on January 28, 2017, including records related to CBP's efforts to comply with the court's oral order requiring prompt production of a list of all class members detained by CBP;[11]

e. Judge Brinkema's Temporary Restraining Order, issued in the Eastern District of Virginia on January 28, 2017;[12]

f. Judge Zilly's Order Granting Emergency Motion for Stay of Removal, issued in the Western District of Washington on January 28, 2017;[13]

---

[10] The following footnote was included for reference: "*See* Alice Speri and Ryan Devereaux, *Turmoil at DHS and State Department—'There Are People Literally Crying in the Office Here,'* THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/asylum-officials-and-state-department-in-turmoil-there-are-people-literally-crying-in-the-office-here/."

[11] The following footnote was included for reference: "Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), *available at* https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order."

[12] The following footnote was included for reference: "Temporary Restraining Order, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017), *available* at https://www.justice4all.org/wp-content/uploads/2017/01/TRO-order-signed.pdf."

g. Judge Burroughs' Temporary Restraining Order, issued in the District of Massachusetts on January 29, 2017;[14]

h. Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;[15]

i. Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;

j. DHS's 'Response to Recent Litigation' statement, issued on January 29, 2017;[16]

---

[13] The following footnote was included for reference: "Order Granting Emergency Motion for Stay of Removal, *Doe v. Trump*, No. C17-126 (W.D. Wash. Jan. 28, 2017), *available at* https://www.justsecurity.org/wpcontent/uploads/2017/01/Seattle-Order.pdf."

[14] The following footnote was included for reference: "Temporary Restraining Order, *Tootkaboni v. Trump*, No. 17-cv-10154 (D. Mass. Jan. 29, 2017), *available at* https://aclum.org/wp-content/uploads/2017/01/6-TRO-Jan-29-2017.pdf."

[15] The following footnote was included for reference: "Order, *Vayeghan v. Trump*, No. CV 17-0702 (C.D. Cal. Jan. 29, 2017), *available at* https://www.aclusocal.org/sites/default/files/vayeghan_-_order_re_tro.pdf."

[16] The following footnote was included for reference: "*Department of Homeland Security Response to Recent Litigation*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation."

k. DHS Secretary John Kelly's 'Statement on the Entry of Lawful Permanent Residents Into the United States,' issued on January 29, 2017;[[17]]

l. DHS's 'Statement on Compliance with Court Orders and the President's Executive Order,' issued on January 29, 2017;[18] and

m. Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.

2. Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airports pursuant to the Executive Order, including:

---

[17] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States,* DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

[18] The following footnote was included for reference: "*DHS Statement On Compliance With Court Orders And The President's Executive Order*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/dhs-statement-compliance-court-orders-and-presidents-executive-order."

a. The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airports both as of the date of this request and as of the date on which this request is processed; and

b. The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at Local International Airports since January 27, 2017, including the number of individuals who have been

i. released,

ii. transferred into immigration detention, or

iii. removed from the United States;

3. Records concerning the number of individuals who have been removed from Local International Airports from January 27, 2017 to date pursuant to the Executive Order;

4. Records concerning the number of individuals who arrived at Local International Airports from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return; and

5. Records containing the 'guidance' that was 'provided to DHS field personnel shortly' after President Trump signed the Executive Order."[19]

Exh. A at 6-9.

28. The Request included an application for expedited processing, on the grounds that there is a "compelling need" for these records under 5 U.S.C. § 552(a)(6)(E)(v)(II) because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." Exh. A at 10.

29. The Request provided detail showing that the ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's

[19] The following footnote was included for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter.*') (emphasis added)."

mission is to obtain information about government activity, analyze that information, and publish and disseminate that information widely to the press and public. Exh. A at 10-11.

30. The Request described examples of the ACLU's information-dissemination function. Exh. A at 11-15.

31. The Request also included an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." In particular, the ACLU emphasized that the Request would significantly contribute to public understanding on a matter of profound public importance about which scant specific information had been made public, *i.e.*, how local CBP Field Offices had enforced, and continue to enforce, the Executive Orders. The Request also made clear that the ACLU plans to disseminate the information disclosed as a result of the Request to the public at no cost. Exh. A at 15-16.

32. The Request also applied for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiffs qualify as "representatives of the news media" and the records are not sought for commercial use, given the

ACLU's non-profit mission and substantial activities to publish information for dissemination to the public, as discussed in greater detail in ¶ 30 above. Exh. A at 16-18.

33. CBP received the Request on Monday, February 6, 2017. *See* **Exhibit B**.

34. To date, CBP has not acknowledged receipt of the Request.

35. As of April 12, 2017, more than 20 days (excepting Saturdays, Sundays, and legal public holidays) have elapsed since CBP received the Request.

36. As of the filing date of this Complaint, Defendants have not notified Plaintiffs of a determination as to whether Defendants will comply with the Request.

37. Because Defendants failed to comply with the 20-business-day time limit provision of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), Plaintiffs are deemed to have exhausted their administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of FOIA for Failure to Provide a Determination Within 20 Business Days

38. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 37 above, inclusive.

39. Defendants have a legal duty under FOIA to determine whether to comply with a request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the request, and also has a legal duty to immediately notify the requester of the agency's determination and the reasons therefor.

40. Defendants' failure to determine whether to comply with the Request within 20 business days after receiving it violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and applicable regulations promulgated thereunder.

## COUNT TWO

### Violation of FOIA for Failure to Make Records Available

41. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 37 above, inclusive.

42. Plaintiffs have a legal right under FOIA to obtain the specific agency records requested on February 2, 2017 and there exists no legal basis for Defendants' failure to make the requested records promptly available to Plaintiffs, their members, and the public.

43. Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

44. On information and belief, Defendants currently have possession, custody or control of the requested records.

**COUNT THREE**

**Violation of FOIA for Failure to Provide a Determination As To Expedited Processing Within 10 Days**

45. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 37 above, inclusive.

46. Defendants have a legal duty under FOIA to determine whether to provide expedited processing, and to provide notice of that determination to Plaintiffs, within 10 days after the date of the Request.

47. Defendants' failure determine whether to provide expedited processing and to provide notice of that determination to Plaintiffs within 10 days

after the date of the Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and applicable regulations promulgated thereunder.

48. Because Defendants have not provided a complete response to the Request, this Court has jurisdiction under FOIA, 5 U.S.C. § 552(a)(6)(E)(iv) to review Defendants' failure to make a determination concerning Plaintiffs' request for expedited processing.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court award them the following relief:

1. Declare that Defendants violated FOIA by failing to determine whether to comply with the Request within 20 business days and by failing to immediately thereafter notify Plaintiffs of such determination and the reasons therefor;

2. Declare that Defendants violated FOIA by failing to disclose the requested records;

3. Declare that Defendants violated FOIA by failing to determine whether to provide expedited processing, and to provide notice of that determination to Plaintiffs, within 10 days;

4. Order Defendants to immediately disclose the requested records to the public and make copies immediately available to Plaintiffs without charge for any search or duplication fees, or, in the alternative, provide for expedited proceedings to adjudicate Plaintiffs' rights under FOIA;

5. Award Plaintiffs their reasonable costs and attorneys' fees; and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 12th day of April, 2017.

CARLTON FIELDS JORDEN BURT, P.A.

By: /s/ *Gail E. Podolsky*
Gail E. Podolsky
Georgia Bar No. 142021
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia 30309
(404) 815-2714
(404) 815-3415 (fax)
gpodolsky@carltonfields.com

***Attorney for Plaintiffs American Civil Liberties Union of Georgia, American Civil Liberties Union of North Carolina, American Civil Liberties Union of West Virginia, and American Civil Liberties Union of South Carolina***